**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK**

IN RE APPLICATION OF TERRA INVEST, LLC
UNDER 28 U.S.C. § 1782 TO CONDUCT
DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS

Case No. _____

**MEMORANDUM OF LAW IN SUPPORT OF
*EX PARTE* APPLICATION FOR AN ORDER UNDER 28 U.S.C. § 1782(a)
<u>TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS</u>**

## TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ................................................................................................. 1

II.    RELEVANT BACKGROUND .............................................................................. 2

    A.     The Russian Real Estate Venture .............................................................. 2

    B.     The Forged Power of Attorney ................................................................... 3

    C.     The Fraudulent Corporate Coup ................................................................ 4

    D.     The Fraudulent Insolvency Scheme ........................................................... 6

    E.     Ongoing Russian Litigation Over the Forged Power of Attorney and
           Fraudulent Insolvency Schemes ................................................................ 9

    F.     The Discovery Sought ................................................................................ 9

III.   ARGUMENT ......................................................................................................... 11

    A.     Terra Invest's Application Satisfies Section 1782's Statutory
           Requirements .............................................................................................. 11

          1.     Terra Invest is an "interested person." ......................................... 12

          2.     OKO Group and Sberbank USA reside or can be found in this
               judicial district. ............................................................................. 12

          3.     The discovery sought is "for use" in Terra Invest's Russian
               lawsuits and to support its criminal complaints. .......................... 13

    B.     The Intel Factors Weigh in Favor of Granting Terra Invest's Application .......... 15

IV.    PRAYER FOR RELIEF ....................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017)..................................................................................14

*Al Fayed v. United States*,
   210 F.3d 421 (4th Cir. 2000) (acknowledging that Section 1782 relief is
   authorized "when proceedings are pending before investigating magistrates in
   foreign countries.") .............................................................................................14

*In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery
   for Use in Foreign Proceedings*,
   773 F.3d 456 (2d Cir. 2014)..................................................................................14

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2015).....................................................................11, 13, 16

*In re Chevron Corp.*,
   2010 WL 4883111 (W.D. Va. Nov. 24, 2010) .............................................17, 18

*In re Chevron Corp.*,
   2010 WL 8767265 (N.D. Ga. Mar. 2, 2010)........................................................12

*In re del Valle Ruiz*,
   939 F.3d 520 (2d Cir. 2019)..................................................................................12

*Dep't of Caldas v. Diageo PLC*,
   925 F.3d 1218 (11th Cir. 2019) ............................................................................16

*Ecuadorian Plaintiffs v. Chevron Corp.*,
   619 F.3d 373 (5th Cir. 2010) ................................................................................12

*Euromepa S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995)..................................................................................17

*In re Flag Telecom Holdings, Ltd. Securities Litig.*,
   236 F.R.D. 177 (S.D.N.Y. 2006) ..........................................................................15

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004)...................................................................................... *passim*

*Investment Vehicles v. KPMG, LLP*,
   798 F.3d 113 (2d Cir. 2015) (reminding that district courts should "keep the
   assessment of § 1782 applications from becoming a battle-by-affidavit of
   international legal experts.") ............................................................................................13, 14

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015) .........................................................................................13

*In re Naranjo*,
   768 F.3d 332 (4th Cir. 2014) .........................................................................................11

*Oncology Found. v. Avanza Dev. Servs., LLC*,
   2017 WL 2376769 (D. Md. May 30, 2017) ....................................................................18

*In re Veiga*,
   746 F.Supp.2d 8 (D.D.C. 2010) .....................................................................................13

## Federal Statutes

28 U.S.C. § 1782 ......................................................................................................... *passim*

## Rules

Fed. R. Civ. P. R. 26, 45 ..................................................................................................1

## I.   __INTRODUCTION__

Petitioner Terra Invest, LLC ("Terra Invest") submits this memorandum of law in support of its *ex parte* application for an Order to conduct limited—but necessary—discovery for use in ongoing Russian litigation pursuant to Title28 United States Code, Section 1782 ("Section 1782"). *See also* Fed. R. Civ. P. R. 26, 45. The Russian litigation arises out of a fraud perpetrated on Terra Invest by its business partners in Russia.  That fraud began with an undisputed act of deceit: the creation and use of a forged Power of Attorney document in Terra Invest's name. Through that forgery, Terra Invest's business partners usurped its managerial rights in, and stole its profits from, a lucrative residential real estate development project in Moscow in which it was a 50% partner. When Terra Invest caught wind of their scheme, it took steps to reclaim its contractual rights in the development project. In response, the business partners—using their fraudulent control over Terra Invest's voting rights through the forged Power of Attorney document—positioned the project for insolvency through a complex web of transactions, which gave them control over the project's largest creditors. The project is headed for a bankruptcy proceeding through which Terra Invest's business partners and other co-conspirators, now in their capacity as creditors, are expected to corruptly move the project's assets and profits to a new ownership group under the guise of a lawful process.

Terra Invest has several lawsuits pending in Russia against its business partners and entities they own or control. Terra Invest also has filed criminal complaints with numerous Russian law enforcement agencies. Terra Invest asks this Court to grant its application to discover a limited scope of information—just over one year's worth of documents, communications, and financial records from two U.S. companies connected to the real estate project—that will almost certainly

reveal information about the scheme's participants, their motives for cutting Terra Invest out of the project, and the location of funds rightfully belonging to Terra Invest.

Terra Invest satisfies the statutory requirements of Section 1782 for granting this application, and the *Intel* discretionary factors weigh in its favor. Indeed, Terra Invest, as a litigant in several Russian cases and complainant in criminal investigations, is an "interested party" under Section 1782.  The discovery it seeks is narrowly tailored and targets only nonparties that reside in this district and is for use in the pending Russian lawsuits. Terra Invest thus respectfully requests that this Court grant its application and authorize Terra Invest to issue the requested subpoenas. *See* Decl. of Daniel A. Schnapp, Esq. at Ex. A; Ex. B.

## II.     **RELEVANT BACKGROUND**

### A.     **The Russian Real Estate Venture**

Mir Mitino is a mixed use real estate development located in the Mitino District of Moscow (the "Project").   *See* Decl. of Khalid Kumykov ¶ 3. The Project is a phased development, construction of which began in 2016.  *Id.*  It comprises 20 apartment buildings, a fitness center, a shopping mall, and seven car parks.  *See id.*

Terra Invest and Fridom, LLC ("Fridom") each own 50% of the Project joint venture (the "Project JV").  *Id.* ¶ 4.  Fridom is a Russian limited liability company. Russian nationals Mikhail Cherkasov and Andrei Dolin—two of the fraudulent actors here—own and control Fridom.[1]  *Id.* ¶ 5.

The Project JV is comprised of and operates through two entities: a holding company, Rozhdestveno, JSC ("JSC-R"), and an operating company, Rozhdestveno, LLC ("LLC-R").  *Id.* ¶ 6.  JSC-R's sole asset is LLC-R.  *Id.*  Terra Invest and Fridom own JSC-R.  *Id.*  JSC-R controls the

---

[1]     On information and belief, Cherkasov owns 50.1% of Fridom and Dolin owns the remaining 49.9%.

Project through the JSC-R's Board of Directors and two General Directors: Dmitrii Kharitonov and Cherkasov. *Id.* ¶ 7. LLC-R acts as the real estate developer, construction manager, and sales and marketing agent for the Project. *Id.* ¶ 8. It receives the Project's sales and other revenue, and is party to all Project investment and debt financing agreements. *Id.* A September 15, 2015 agreement established that all income from the Project would be distributed *pro rata* to the JSC-R shareholders: Terra Invest and Fridom. *Id.* ¶ 9. The Project is being financed using several lines of credit, all of which were refinanced in March 2019 through a loan to LLC-R from Sberbank of Russia, PJSC ("Sberbank"). *Id.* ¶ 10. Sberbank operates in the United States through Sberbank CIB USA Inc. ("Sberbank USA"). *Id.* ¶ 43.

The Project is being constructed on land that Poultry Farm Krasnogorskaia, JSC ("Poultry Farm") owns, subject to the terms of a September 30, 2015 investment contract between it and LLC-R. *Id.* ¶ 11. Under that investment contract, Poultry Farm is entitled to receive a share of future residential and commercial real estate rental income from the Project. *Id.* ¶ 12. Poultry Farm is owned and controlled by Capital Group Development, LLC ("Capital Group"), which itself is owned by three shareholders: Vladislav Doronin, Pavel Tio, and Eduard Berman, each of whom owns an equal 33.3% equity stake in the company. *Id.* ¶¶ 13, 14, 15. Capital Group's international real estate development and investment business appears to operate together with and through Mr. Doronin's other company, OKO Group, LLC ("OKO Group"), a United States real estate company that operates principally in New York and Florida. *See id.*

### B.   The Forged Power of Attorney

On July 12, 2019, JSC-R held its annual general shareholders' meeting without notifying Terra Invest. Kumykov Decl. ¶ 16. Terra Invest's interests ostensibly were represented during that meeting by JSC-R General Director Kharitonov. *See id.* ¶ 17.

3

But Terra Invest did not authorize Kharitonov to represent Terra Invest's interests during the 2019 general shareholders' meeting. *Id*. Kharitonov instead did so using a forged Power of Attorney document. *Id*. Terra Invest has since discovered that its partners—Fridom co-owners Cherkasov and Dolin—were behind the forgery. *See id*. ¶ 21.

Terra Invest has subsequently, through the Russian courts, obtained a copy of the forged Power of Attorney. *Id* ¶ 18. Terra Invest submitted this document for forensic analysis to the Russian Federal Centre of Forensic Science, which falls under the purview of the Ministry of Justice of the Russian Federation. *Id*. ¶¶ 19. There, an expert forensic examiner independently confirmed that neither the signature nor the corporate seal on the Power of Attorney document were legitimate. *Id*. ¶ 20. The examiner concluded that both the signature and Terra Invest corporate seal likely were copied-and-pasted from other documents. *See id*.

## C.     The Fraudulent Corporate Coup

Terra Invest now knows that its partners—Fridom co-owners Cherkasov and Dolin—were behind the creation of the forged Power of Attorney and have used that document to perpetrate a fraudulent scheme to deprive Terra Invest of its rights in the Project. *See generally id*. Terra Invest has uncovered some—but far from all—of Cherkasov and Dolin's fraudulent activity and the harm their conduct has caused. *See id*.

Terra Invest, for example, has learned that Cherkasov and Dolin convinced JSC-R General Director Kharitonov to use the forged Power of Attorney at the 2019 shareholder's meeting. *Id*. ¶ 22. In exchange for his cooperation, Cherkasov and Dolin agreed to "employ" Kharitonov's 20-year-old son as "advisor to the General Director" of LLC-R. *See id*. That job had no actual responsibilities attached to it, yet paid a handsome salary—a front for Cherkasov and Dolin to pay Kharitonov for his cooperation. *Id*.

4

Terra Invest also now knows that Kharitonov's cooperation included using the fraudulent Power of Attorney during the 2019 shareholders' meeting to help Cherkasov and Dolin elect JSC-R's new board of directors. *Id.* ¶ 23. All of the new board members are Cherkasov and Dolin associates and allies, and thus resulted in Cherkasov and Dolin having complete control over JSC-R, LLC-R, and the Project. *Id.* Indeed, once their preferred directors were installed, all votes during 2019 shareholder's meeting were cast as directed by Cherkasov and Dolin. *Id.* ¶ 24. These votes included the board authorizing JSC-R to execute several large deals with Sberbank. *Id.*

In the fall of 2019, before Terra Invest knew about the forged Power of Attorney, Terra Invest attempted to resolve its shareholder dispute with Cherkasov and Dolin. *See id.* ¶ 25. Despite several months of trying to do so, Terra Invest's efforts proved fruitless. *See id.* As a result, in June 2020, Terra Invest engaged Ernst & Young ("EY") to analyze the finances of JSC-R and LLC-R. *See id.* ¶ 26. EY identified problematic transactions that occurred after Cherkasov and Dolin orchestrated their illegal takeover of JSC-R. *See id.* ¶ 27. These transactions reveal that Cherkasov and Dolin were, through their control of JSC-R and brazen use of the forged Power of Attorney, using Project assets and money to enrich themselves and benefit their family members. *See id.*

To date, Terra Invest knows that these improper transactions included, for example, LLC-R signing lucrative contracts at inflated prices with companies controlled by Cherkasov, Dolin, and their family members, *see id.* ¶ 28(a); covering Cherkasov's expenses at his personal residence and purchasing a Mercedes Benz Maybach S-Class for his personal use, *see id.* ¶ 28(b); paying utilities and operating expenses for certain individuals, *see id.* ¶ 28(c); the below-market sale of a Project apartment to the daughter of Cherkasov and Dolin's attorney, *see id.* ¶ 28(d); and multiple charitable and sponsorship donations made in Cherkasov's name, *see id.* ¶ 28(e).

### D.     The Fraudulent Insolvency Scheme

Since discovering the forged Power of Attorney and some of the fraudulent uses of it, Terra Invest has made numerous attempts to restore its rights and obtain compensation for the damages it has suffered.  *See id*. ¶¶ 29, 30.  These attempts include multiple lawsuits against JSC-R and LLC-R that already have been filed as well as additional lawsuits that Terra Invest anticipates filing in the future.  *See id*.  They also include requests for criminal investigations into the origins of the forged Power of Attorney and all uses of it.  *See id*. ¶¶ 31(c), 31(d).

But instead of defending their conduct, Cherkasov and Dolin have doubled-down on their fraud.  *See id*. ¶ 34.  On information and belief, Cherkasov and Dolin, in coordination with Capital Group (under the leadership and direction of primary shareholders Doronin, Tio, and Berman), Sberbank and others, have orchestrated a loan-swap scheme under which they have control over the Project JV's largest creditors and intend to bankrupt the Project JV entities so they can convert the Project assets and profits from LLC-R to their new ownership group under the guise of a lawful process.  *Id*.  On information and belief, to date, the scheme has operated as follows:

- On August 4, 2020, Capital Group-owned and controlled company Poultry Farm received a loan from Sberbank in the amount of 1.007 billion rubles—the exact amount of LLC-R's debt to Sberbank, *see id*. ¶ 35(a).

- On the same day, Poultry Farm loaned Viktoriia, JSC ("Viktoriia")—an entity jointly controlled by Capital Group, PIK Group, Cherkasov, and Dolin—the exact same amount (1.007 billion rubles), *see id*. ¶ 35(b).

- On the same day, Viktoriia purchased LLC-R's existing 1.007 billion rubles' debt from Sberbank, and thus became entitled to exercise creditor rights under the debt refinancing agreement between LLC-R and Sberbank, *see id*. ¶ 35(c).

- Shortly after that, Viktoriia terminated Cherkasov's personal guarantee under the debt refinancing agreement between LLC-R and Sberbank, paving the way for a bankruptcy proceeding in which Cherkasov's assets would not be implicated, *see id*. ¶ 35(d).

- Then, on October 13, 2020, Poultry Farm sued LLC-R in the Commercial Court of the City of Moscow (the "Poultry Farm Lawsuit") to terminate the parties' investment contract. Poultry Farm asserted a claim for 22 billion rubles in damages—an amount high enough that it unquestionably would render the Project JV entities insolvent, *see id.* ¶ 35(e).

- On October 27, 2020, ostensibly because of the Poultry Farm Lawsuit, Viktoriia demanded that LLC-R repay its total outstanding debt within five business days of the demand. In other words, Viktoriia was demanding repayment of the 1.007 billion rubles' loan Viktoriia bought from Sberbank, presumably using the loan from Poultry Farm, which Poultry Farm itself originally loaned from Sberbank all on the same day, *see id.* ¶ 35(f).

A flowchart demonstrating the flow of money to facilitate this scheme is below.



During a November 11, 2020 court hearing, Terra Invest petitioned to intervene in the Poultry Farm Lawsuit. Kumykov Decl. ¶ 36. But both Poultry Farm and LLC-R—acting under the authority of the JSC-R board elected using the forged Power of Attorney during the 2019 shareholders' meeting—objected, then announced they were working out a settlement for the court's approval. *See id*.

The settlement proposed by Poultry Farm to LLC-R is a farcical compromise. Under the proposed settlement, Poultry Farm would agree to drop its lawsuit against LLC-R on the supposed condition that LLC-R not commit another breach of the investment contract. *Id*. ¶ 37. If LLC-R breached again, according to the settlement plan, LLC-R would take the steps necessary for Poultry Farm to secure a judgment against it under which Poultry Farm could collect the entire amount it sought in damages (22 billion rubles) without having to reinstitute litigation. *See id*. ¶ 38.

Terra Invest is fighting to keep the court from approving this settlement. *See id*. ¶ 36. However, if Terra Invest is unsuccessful and the settlement is approved, Cherkasov and Dolin could simply cause LLC-R to breach the terms of the Poultry Farm investment contract in violation of the settlement agreement. *See id*. ¶ 37. Terra Invest believes that Cherkasov and Dolin will cause such a breach to occur, allowing Poultry Farm to enforce the settlement agreement and obtain a judgment of 22 billion rubles. *See id* ¶ 38.

Should Poultry Farm secure the judgment for 22 billion rubles, the Project JV entities will become insolvent. *See id*. ¶ 38. Upon their insolvency, Poultry Farm, and by extension its shareholders (Capital Group (Doronin, Tio, and Berman), Cherkasov, and Dolin) will be positioned to assume control over the Project and strip Terra Invest of its stake.

### E.     Ongoing Russian Litigation Over the Forged Power of Attorney and Fraudulent Insolvency Schemes

Terra Invest has filed several lawsuits in the Arbitrazh Court of Moscow arising out of the forged Power of Attorney.  *See id*. ¶ 30.  Most notably, on February 24, 2021, Terra Invest filed a lawsuit against Kharitonov—the JSC-R General Director who claimed to serve as Terra Invest's proxy using the forged Power of Attorney—challenging the authenticity and use of the forged Power of Attorney.  *See id*. ¶ 31(a).  Terra Invest also has filed a separate lawsuit against JSC-R seeking to invalidate the election of new board members and the subsequent actions of the new board during the 2019 shareholders' meeting on the grounds that these actions were based on the forged Power of Attorney.  *See id*. ¶ 31(b).  Several other related lawsuits were filed and are pending in Russia.  *See id.* ¶ 30.  Furthermore, Terra Invest envisions filing additional lawsuits against all of the bad actors identified above in the near future.

Terra Invest also has initiated criminal complaints with various Russian law enforcement agencies.  *See id*. ¶¶ 31(c), 31(d).  It has submitted a complaint with the Department of Interior of the Ministry of Internal Affairs of Russia for the city of Kolomna (Moscow region), requesting a criminal investigation into the forged Power of Attorney and the unlawful ways in which it was used.  *Id*. ¶ 31(c).  Similar complaints have been filed with the Ministry of Internal Affairs of Russia, Federal Security Service of Russia, Office of the General Prosecutor of Russia, Military Investigations Directorate of the Moscow branch of the Investigative Committee of Russia, and Department of Interior of the Ministry of Internal Affairs of Russia for the South-Eastern District of Moscow.  *See id*. ¶ 31(d).

### F.     The Discovery Sought

Cherkasov, Dolin, Capital Group (and its principal owners, Doronin, Tio, and Berman)— acting through Poultry Farm and Viktoriia—and their co-conspirators have demonstrated a

willingness to do anything necessary to take over the Project and cover their tracks while doing so.  Together, they have conspired to use and have used the forged Power of Attorney to weave a tapestry of ostensibly legitimate dealings designed to deprive Terra Invest of its interests in the Project JV entities and Project profits.

Understanding the roles, responsibilities, coordination, and transactions of and between those involved in these schemes is essential to Terra Invest's civil and criminal cases in Russia.  *See* Decl. of Sergey Ivanovich Kovalev; Decl. of Oleg Tkachenko.  Because one of the essential participants—Capital Group—often conducts its Russian business in tandem with and through a U.S. entity under common ownership (*i.e.*, Doronin)—OKO Group—Terra Invest asks this Court for the authority to obtain a discrete set of records in the possession or control of that company, and which is necessary to advance the ongoing litigation and criminal complaints in Russia.

OKO Group has a place of business in New York, New York.  Kumykov Decl. ¶ 14.  It was founded, and is owned and controlled by its Chief Executive Officer Vladislav Doronin.  *Id.* ¶ 15.  As noted above, Doronin also owns one-third of and exercises substantial control over Capital Group, which itself is billed as an international commercial and residential real estate development and investment company.  *See id.* ¶¶ 13-15.  Capital Group owns and controls Poultry Farm and is an owner of Viktoriia, both of which participated in the insolvency scheme.  *See id.* ¶¶ 13, 35(b).

Based on a review of OKO Group's website and various public facing documents, OKO Group appears to serve as the U.S. branch of Capital Group and Terra Invest reasonably believes that OKO Group is in possession or control of documents related to Capital Group's projects, investments, debt financing arrangements, and other real estate business dealings related to the Project.  *See id.* ¶¶ 41, 42.

Terra Invest also is applying for authority to subpoena a limited scope of documents, mainly financial records, related to the Project from Sberbank USA.  Schnapp Decl. ¶ 3.  Sberbank is a Russian-based, part state-owned, part publicly-traded international financial institution who, as noted above, played a critical role in the issuance of loans used in the scheme to strip Terra Invest of its stake in the Project. As such, transaction and loan documents, and any other Project-related financial records, that Sberbank USA possesses or exercises control over, are relevant to and will be used in Terra Invest's Russian litigation.

## III.   <u>ARGUMENT</u>

This Court has the authority to order discovery for use in proceedings before foreign or international tribunals. 28 U.S.C. § 1782(a).  An application for discovery under Section 1782 may be granted *ex parte* where, as here, it satisfies the statutory requirements and the discretionary factors weigh in the applicant's favor.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004); *see also In re Naranjo*, 768 F.3d 332, 339 n.4 (4th Cir. 2014).

### A.   **Terra Invest's Application Satisfies Section 1782's Statutory Requirements**

For a court to grant an application under 28 U.S.C. § 1782(a), a petitioner must satisfy three statutory requirements: (1) the request must be made by a foreign or international tribunal or by application of an "interested person"; (2) the discovery is sought from a person who "resides or is found" in the district of the court to which the application is made; and (3) the discovery must be "for use in a proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2015).  All three are met here.

1.      *Terra Invest is an "interested person."*

Terra Invest is an "interested person" within the meaning of Section 1782.  *See Intel*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782.").  An interested person is anyone possessing "a reasonable interest in obtaining [judicial assistance]," including litigants and "any other person . . . [who] merely possess[es] a reasonable interest in obtaining the assistance." *Id*. at 257.

Because Terra Invest is a litigant in numerous Russian cases for which this discovery is sought, it is an interested person under Section 1782.  *In re Chevron Corp.*, 2010 WL 8767265, at *3 (N.D. Ga. Mar. 2, 2010) (defendant in a foreign proceeding is an interested party); *see also Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373 (5th Cir. 2010) (affirming order allowing participant in foreign proceeding to take a deposition under Section 1782); *see also* Kumykov Decl. ¶ 30; Decl. of Sergey Kovalev ¶¶ 4, 7.

2.      *OKO Group and Sberbank USA reside or can be found in this judicial district.*

OKO Group and Sberbank USA reside or can be found within the Southern District of New York.  *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019) ("§1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process.").

OKO Group is a Delaware limited liability company with its' principal U.S. operations based in New York, New York and Miami, Florida.  Its Manhattan address is 745 5th Avenue #902, which is within the Southern District of New York.  OKO Group has employees in its New York office and is actively developing at least one mixed-use real estate project in Manhattan.

Sberbank USA is a Delaware corporation headquartered in New York on the 46th floor of the Carnegie Hall Tower at 152 West 57th Street.  Sberbank has employees here and is actively engaged in business within this district.

Because the Court could exercise specific personal jurisdiction over both companies, it has jurisdiction to authorize Terra Invest's application under Section 1782.

### 3.   *The discovery sought is "for use" in Terra Invest's Russian lawsuits and to support its criminal complaints.*

The requested discovery is "for use" in foreign proceedings—the Russian lawsuits and to support Terra Invest's criminal complaints—before a foreign tribunal—the Russian courts.  *See Brandi-Dohrn*, 673 F.3d at 80.

The "for use" requirement does not require that Terra Invest demonstrate that the discovery sought is essential to its cases or criminal complaints in Russia. The requirement instead is satisfied by showing that the discovery "will be employed with some advantage or serve some use in the proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015); *In re Veiga,* 746 F.Supp.2d 8, 18 (D.D.C. 2010) (citing cases confirming that "the burden imposed upon an applicant is *de minimis*."). Nor does this requirement obligate Terra Invest to demonstrate admissibility under foreign evidentiary rules.  *See Certain Funds, Accounts and/or Investment Vehicles v. KPMG, LLP*, 798 F.3d 113, 122, n.11 (2d Cir. 2015) (reminding that district courts should "keep the assessment of § 1782 applications from becoming a battle-by-affidavit of international legal experts."); *In re Veiga*, 746 F. Supp. 2d at 18 (recognizing that "district courts need not determine that the evidence would actually, or even probably, be admissible in the foreign proceeding."). The "for use" requirement merely requires that an applicant show that it will have "some means

13

of actually using" the discovery requested "in the foreign proceeding." *See Certain Funds*, 798 F.3d at 122.

Courts, moreover, have consistently held that Section 1782 may be used to obtain discovery for use in the investigative stage of foreign proceedings. *See, e.g.*, *In re Accent Delight Int'l Ltd.*, 869 F.3d 121 (2d Cir. 2017) (granting application for discovery for use in fraud investigation relating to prominent artworks); *In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456 (2d Cir. 2014) (granting application for discovery for use in Swiss criminal investigation into a Ponzi scheme); *Al Fayed v. United States*, 210 F.3d 421, 424 (4th Cir. 2000) (acknowledging that Section 1782 relief is authorized "when proceedings are pending before investigating magistrates in foreign countries.").

Here, Terra Invest has applied for authority to subpoena records from the OKO Group because of OKO Group's likely involvement in Capital Group's—and by extension, Poultry Farm and Vikotriia's—real estate business activities, which would include the Project. The information Terra Invest seeks from OKO Group, as described above, is relevant and will be used in ongoing civil litigation, future civil cases, and in the investigation of its criminal complaints. *See* Kumykov Decl. ¶¶ 30, 31; Kovalev Decl. ¶¶ 6, 20, 21, 22, 23; Decl. of Oleg Tkachenko at sec. III. The same is true of the financial and transaction records that Terra Invest seeks to subpoena from Sberbank USA. *See id*. For example, if OKO Group or Sberbank USA possess or control documents or communications that relate to the Project and fall within the relevant time period—which covers the period immediately before and through Cherkasov and Dolin's use of the forged Power of Attorney to present—that information would corroborate Terra Invest's claims about Capital

14

Group, Poultry Farm, Viktoriia, and Sberbank's coordinated involvement in the fraudulent loan-swap to position the Project JV entities for insolvency.  *See id.*

To the extent that OKO Group or Sberbank USA do not have possession or control over documents, communications, or financial records responsive to Terra Invest's subpoenas, then they can say so under penalty of perjury.  *But see In re Flag Telecom Holdings, Ltd. Securities Litig.*, 236 F.R.D. 177 (S.D.N.Y. 2006) ("If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed to have control, even if the documents" are "located abroad.").  Even that response would be relevant and "for use" in Terra Invest's ongoing criminal investigations into those involved in the creation and use of the forged Power of Attorney. *See* Tkachenko Decl. ¶¶ 27, 28.

Because the discovery Terra Invest seeks from OKO Group and Sberbank USA is relevant and will be used in civil cases and criminal investigations in foreign tribunals, Terra Invest has satisfied the third statutory requirement of Section 1782.

### B.     The Intel Factors Weigh in Favor of Granting Terra Invest's Application

The Court should grant Terra Invest's application because the *Intel* factors also weigh in its favor. The *Intel* factors are: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (2) the receptivity of the foreign tribunal to U.S. court assistance; (3) whether the Section 1782 request is an attempt to "circumvent foreign proof-gathering restrictions"; and (4) whether the discovery sought is "unduly intrusive or burdensome." *Intel*, 542 U.S. at 264-65.

Neither party is responsible for carrying a burden under these discretionary factors. *See Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218, 1223 (11th Cir. 2019) ("The discretionary factors come into play after the statutory requirements have been satisfied, and they are guideposts which help a district court decide how to best exercise its discretion.").  The Court instead is charged with exercising its discretion:

> in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.

*Brandi-Dohrn*, 673 F.3d at 81.  And when it does so here, it should conclude that all *Intel* factors weigh in favor of granting Terra Invest's application.

The first *Intel* factor weighs in Terra Invest's favor because the discovery sought is from OKO Group and Sberbank USA, both of which are nonparticipants in the ongoing Russian proceedings.  The need for assistance from U.S. courts is greater when an applicant requests discovery from nonparticipants in foreign proceedings because such nonparticipants possess evidence that may otherwise be unobtainable.  *See Request for Judicial Assistance from the Dist. Court in Svitavy, Czech Republic*, 748 F.Supp.2d 522, 526 (E.D. Va. 2010).  That is the case here.

OKO Group and Sberbank USA are U.S.-based companies that are not parties to any of the Russian proceedings.  The limited discovery Terra Invest seeks from OKO Group and Sberbank USA for purposes of the Russian proceedings warrants judicial assistance.  Without it, Terra Invest may not uncover the evidence necessary to reestablish its shareholder rights in the Project JV entities and recover the damages it has suffered.  *See* Kovalev Decl. ¶¶ 19-23.

The second *Intel* factor, which considers the receptivity of the foreign tribunal to U.S. court assistance, also weighs in Terra Invest's favor.  The analysis here is not whether the foreign tribunal itself would order or even permit discovery in the same case, but rather how the foreign tribunal might respond to assistance from a U.S. court.  *In re Chevron Corp.*, 2010 WL 4883111, at *3 (W.D. Va. Nov. 24, 2010).

"Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa S.A. v. R. Esmerian, Inc*., 51 F.3d 1095, 1102 (2d Cir. 1995).  A court should deny discovery on this basis only when it is provided with "authoritative proof that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id*. at 1100.

Here, the Russian courts and investigators would be receptive to materials discovered under Section 1782.  *See* Kovalev Decl. ¶¶ 20-23; Tkachenko Decl. ¶¶ 22-28.  The Arbitrazh Court of Moscow, which is the court where Terra Invest's cases are pending, applies a relevance standard in determining what evidence to consider.  Kovalev Decl.¶ 17.  The procedural code governing Arbitrazh Court proceedings contemplates that courts will accept written evidence of foreign origin as part of the material that may be submitted in support of a case.  *See id*. ¶¶ 14, 15, 18.  For the reasons described above, the Arbitrazh Court of Moscow likely will find relevant the evidence Terra Invest anticipates discovering in OKO Group and Sberbank USA's possession, custody, or control.  *See id*. ¶¶ 21, 22.  So too will the investigators in Terra Invest's criminal complaints.

17

Tkachenko Decl. ¶¶ 22-28.  Because the discovery Terra Invest seeks would be expected and accepted in the foreign proceedings, the second *Intel* factor favors Terra Invest.

The third *Intel* factor asks the Court to consider whether Terra Invest's 1782 application is really an attempt to circumvent discovery restrictions in the foreign proceedings. It is not. Terra Invest is seeking Section 1782 discovery because it cannot obtain records from U.S.-based companies through its Russian litigation. *Chevron*, 2010 WL 4883111 at *3 (finding third factor weighed in favor of discovery where petitioner sought evidence from a source that was not subject to the foreign tribunal's jurisdiction); *see also* Kovalev Decl. ¶ 18.  And as described above, the Arbitrazh Court has a procedural mechanism for accepting relevant evidence of foreign origin, which demonstrates the courts' receptivity to evidence obtained through U.S. discovery.  *See Request for Judicial Assistance*, 748 F.Supp.2d at 529; Kovalev Decl. ¶¶ 18, 19; *see also* Tkachenko Decl. at sec. III.

The fourth *Intel* factor requires consideration of whether Terra Invest's discovery requests are unduly intrusive or burdensome. Requests are not unduly intrusive or burdensome when they are "narrowly tailored" and aimed at discovering relevant documents and testimony.  *See Oncology Found. v. Avanza Dev. Servs., LLC*, 2017 WL 2376769, at *1 (D. Md. May 30, 2017).

Terra Invest is seeking authority to subpoena a finite set of documents, communications, and financial records about the Project, during a limited time period, and involving companies and individuals with ties to the fraudulent schemes that are the focus of Terra Invest's Russian cases and criminal complaints.  Schnapp Decl. ¶¶ 2, 3.  The discovery Terra Invest seeks from OKO

Group and Sberbank USA is relevant, admissible, and within the scope of what the Federal Rules of Civil Procedure allow. *See generally* Kumykov Decl.; Kovalev Decl.; Tkachenko Decl. If OKO Group or Sberbank USA object to Terra Invest's subpoena as being overly burdensome, Terra Invest will work in good faith to resolve that objection as would be expected of it in the normal course of federal civil litigation.

**IV.** **PRAYER FOR RELIEF**

This application meets all three statutory requirements for under Section 1782 and the discretionary factors weigh in Terra Invest's favor. Terra Invest thus respectfully requests that this Court:

A.  Grant the application for discovery under 28 U.S.C. § 1782(a);

B.  Grant Terra Invest leave to serve the subpoena attached as Exhibit A to the Schnapp Declaration for documents and communications in the possession, custody, or control of OKO Group, LLC;

C.  Grant Terra Invest leave to serve the subpoena attached as Exhibit B to the Schnapp Declaration for documents and financial records from Sberbank CIB USA Inc.; and

D.  Grant such other and further relief as is just and proper.


Dated: June 23, 2021

Respectfully submitted,

*/s/ Daniel A. Schnapp*
Daniel A. Schnapp, Bar No. 4005799
**NIXON PEABODY LLP**
55 W. 46th Street, Tower 46
New York, NY 10036
Telephone: 212-940-3026
dschnapp@nixonpeabody.com

*Counsel for Petitioner Terra Invest, LLC*