# EX. A



# ИНДИКАТИВНЫЕ УСЛОВИЯ
## установления лимита кредитования компании ООО «НДВ Строй»

Всё, что приведено ниже, является исключительно описанием предварительных условий, на которых сделка может быть реализована, и не создаёт обязательств ПАО «Промсвязьбанк» (далее также — ПСБ, Банк) по предоставлению финансирования. Финальная реализация сделки зависит от дальнейшей проверки заемщика, а также участников сделки и проекта, согласования условий, утверждения их на Кредитном комитете и Советом директоров Банка (при необходимости) и надлежащем юридическом оформлении. Список условий не является полным, конечным или включающим в себя все возможные требования ПСБ.

Однако если сделка будет реализована, то при ее реализации в любом случае будут соблюдены изложенные ниже условия, если иное не будет согласовано Сторонами.

| | |
|---|---|
| Заемщик | ООО «НДВ Строй» |
| Вид кредитного продукта | Продукт 1,2. Кредитная линия с лимитом выдачи |
| Цель получения кредитного продукта, сумма и валюта финансирования | Продукт 1<br>Обеспечение обязательств ООО «НДВ Строй» в рамках предварительного Соглашения об уступке прав и обязанностей (перенайме) по договору долгосрочной аренды земельного участка № М-08-022112 от 31.05.2004 г. (далее «договор о перенайме»).<br>Продукт 2.<br>Финансирование работ по проектированию, затрат по получению ТУ, управлению проектом |
| Лимит кредитования | Общий лимит кредитования 1 400 000 тыс. руб.<br>Продукт 1. 750 000 тыс. руб.;<br>Продукт 2. 650 000 тыс. руб. |
| Срок финансирования | Продукт 1,2:<br>3 года |
| Процентная ставка, комиссии | Продукт 1,2. Ключевая ставка + 5% годовых.<br>Комиссия за возможность кредитования - 0,1% от суммы лимита, оплачивается в дату подписания кредитного договора. |
| Порядок погашения основного долга | Ежеквартально начиная со 2 кв. 2016 года. Равными долями. |
| Порядок погашения процентов | Продукт 1,2 ежеквартально. |
| Объект | совокупность зданий жилого, нежилого и смешанного назначения, которые будут возведены на земельных участках общей площадью 581 303 кв.м., находящихся по адресу: г. Москва, район Митино, вблизи с. Рождествено. |
| Обеспечение | 1. Залог права требования возврата гарантийного депозита, внесенного в рамках предварительного соглашения о заключении договора о перенайме и инвестиционного контракта;<br>2. Залог 100% долей в уставном капитале Заемщика (без поручительства залогодателя);<br>3. Залог имущественных прав по реализуемому Объекту (Проект Митино);<br>4. Поручительства Хрусталева А.А., Черкасова М.А., Долина А.В. и Ананьева Д.Н. (сейфовое). |
| Отлагательные условия предоставления кредита | **Продукт 1 (в части выборки лимита до 375 000 000 руб.).**<br>1. Оформление поручительств согласно п.4 раздела «Обеспечение».<br>2. Согласование целевого расходования кредитных средств с Банком.<br><br>**Продукт 1 (в части выборки лимита свыше 375 000 000 руб.) и продукт 2.**<br>1. Предоставление в Банк Акта сверки расчетов по обязательствам между АО ХК «ГВСУ «Центр» и ЗАО «Птицефабрика «Красногорская» (далее по тексту — Фабрика) по предварительному Соглашению об уступке прав и обязанностей (перенайме) по договору долгосрочной аренды земельного участка № М-08-022112 от 31.05.2004 г..<br>2. Предоставление выписок из ЕГРП, подтверждающих наличие зарегистрированного права аренды земельных участков, а также отсутствие |

.обременений на это право.

3. Отсутствие препятствий для изменения вида разрешённого использования земельных участков по Объекту на жилищное строительство, а также для получения разрешения на строительство по Объекту.

4. Предоставление документов, подтверждающих, что ни один из участков не обременён режимом природного комплекса и какими-либо иными ограничениями и запретами на строительство (кроме обременения режимом прибрежной и водоохраной зоны, указанного в п. 1.1 договора аренды, а также охранной зоной ЛЭП).

5. Предоставление копий подписанных всеми сторонами следующих договоров (со всеми приложениями, изменениями и дополнениями к ним), заключённых АО ХК «ГВСУ Центр» / ООО «НДВ Строй»:

5.1. Договор субаренды земельного участка № С-1 от 17.12.2014 г.

5.2. Инвестиционный контракт с условиями, определяющими земельные участки, относящиеся к разным очередям строительства, и сроки по каждой очереди (сроки заключения доп. соглашения, определяющего объём обязательств по 2-й очереди, сроки изменения разрешенного использования, сроки передачи прав на земельные участки, сроки получения разрешения на строительство).

5.3. Предварительное соглашение от 17.12.2014 г. об уступке прав и обязанностей (перенайме) по договору долгосрочной аренды земельного участка № М-08.022112 от 31.05.2004 г.

5.4. Договор № З-1 залога прав аренды земельного участка от 17.12.2014 г.

6. Предоставление документа подтверждающего отсутствие задолженности по уплате арендной платы за земельные участки, а также любых иных оснований для досрочного расторжения договора аренды.

7. Предоставление подписанных соглашений о передаче прав и обязанностей с ГВСУ на ООО «НДВ Строй» между ГВСУ, ЗАО «Птицефабрика Красногорская» и ООО «НДВ Строй», по всем договорам, перечисленным в п.5 настоящего документа и заключенным со стороны ГВСУ.

8. Предоставление подписанного бизнес-плана проекта согласованного с Банком.

9. Согласование целевого расходования кредитных средств с Банком по согласованной форме.

10. Закрепление в кредитной документации условия о направлении не менее 10% средств, поступивших от реализации помещений в Объекте, на погашения кредитных обязательств перед Банком.

11. Предоставление актуального CF проекта, согласованного с Банком.

**Продукт 2.**
1. Оформление обеспечения согласно п.1-4 раздела «Обеспечение».
2. Положительное заключение на предмет подтверждения правоспособности юридических лиц, участвующих в сделках, и полномочий их руководителей.

| Обязательные условия | **Продукт 1.**<br>1. Положительное заключение на предмет подтверждения правоспособности юридических лиц, участвующих в сделках, и полномочий их руководителей – в соответствии с внутренними документами Банка – до 01/10/2015.<br>2. Оформление обеспечения согласно п.1-3 раздела «Обеспечение» - до 01/10/2015.<br><br>**Продукт 1 (в части выборки лимита свыше 375 000 000 руб.) и продукт 2.**<br>1. Предоставление копий подписанных всеми сторонами следующих договоров (со всеми приложениями, изменениями и дополнениями к ним), заключённых между ЗАО «Птицефабрика Красногорская» и ООО «НДВ Строй»:<br>1.1. Договор участия в долевом строительстве – не позднее 31/12/2015. |
|---|---|



1.2. Соглашение об уступке прав части и обязанностей (перенайме) по договору долгосрочной аренды земельного участка № М-08.022112 от 31.05.2004 г. – не позднее 01/10/2015.

2. Договоры, заключённые до «01» августа 2015 г., должны быть переданы не позднее «07» сентября 2015 г., а остальные договоры – не позднее 5 рабочих дней с даты их заключения.

3. Отсутствие во всё время действия лимита кредитования задолженности по уплате арендной платы за земельные участки, а также любых иных оснований для досрочного расторжения договора аренды.

4. Согласовать с Банком до 18/09/2015 независимого сюрвейера проекта, процедуру взаимодействия со сюрвейером в части подтверждения бюджета проекта и его последующего мониторинга, источник оплаты расходов сюрвейера.

5. Осуществлять 100% оборотов, связанных с расчетами и продажами по проекту, через расчетные счета открытые в Банке в течение всего периода кредитования.

6. Осуществлять 100% оборотов Застройщика и Генерального Подрядчика, связанных с расчетами и продажами по проекту, через расчетные счета открытые в Банке в течение всего периода кредитования.

7. Предварительно письменно согласовывать с Банком внесение изменений в проект строительства (в т.ч. проектную документацию), изменение сроков строительства, изменение размера площадей, изменение целей назначения площадей.

8. Не осуществлять/согласовывать с Банком заимствование (привлечение) денежных средств (т.е. получение кредитов, и иных форм привлечения денежных средств на возвратной и возмездной основе), а также предоставления заемщиком поручительств/гарантий по обязательствам третьих лиц.

9. Не предоставлять займы третьим лицам, не осуществлять покупку ценных бумаг, в том числе в вексельной форме.

10. Обеспечить своевременное продление разрешения на строительство объекта.

11. До полного исполнения обязательств по Кредитному договору не проводить (обеспечить не проведение) без письменного согласования с Банком:
- изменения состава участников Заемщика в том числе изменение принадлежащей определенному лицу или лицам (бенефициару/бенефициарам) возможности прямо или косвенно оказывать существенное влияние на порядок управления Заемщиком;
- изменения размера уставного капитала Заемщика;
- изменения организационно-правовой формы Заемщика;
- изменения органов управления Заемщика.

12. В случае увеличения/изменения уставного капитала Заемщика, обеспечить оформление в залог Банку 100% долей в УК с учетом его увеличения, в течение 30 дней.

13. Обеспечить соответствие запрашиваемого объема финансирования, графику финансирования и этапам выполнения СМР по проекту.

14. Обеспечить целевое использование кредитных средств, посредством предоставления актов КС-2 и справок КС-3.

15. Обеспечить соответствие данных КС-2 и КС-3 фактически выполненному объему работ (физическое подтверждение) и плановым показателям.

16. Обеспечить реализацию имущественных прав на получение в собственность площадей в Объекте (проект в Митино) и/или привлечение средств участников долевого строительства в рамках 214-ФЗ "Об участии в долевом строительстве многоквартирных домов и иных объектов недвижимости и о внесении изменений в некоторые законодательные акты РФ".



17. Не отчуждать без согласования с Банком, имущество, принадлежащее Заемщику, если сумма сделки или несколько взаимосвязанных сделок превышает 5 млн. рублей, а также, если условия отчуждения такого имущества противоречат положениям о разграничении компетенции (Приложение № 1 к настоящему соглашению).

18. На ежемесячной основе согласовывать с Банком количество квартир (с указанием их характеристик: метры, стоимость, расположение и т.п.) к продаже на следующий месяц.

19. Не совершать без письменного согласования с Банком, сделки, связанные с обременением, залогом активов Заемщика.

20. Без письменного согласования с Банком не осуществлять распределение чистой прибыли между участниками ООО «НДВ Строй» в течение всего периода кредитования.

21. Обеспечить предоставление информации по площадям и цене реализовываемых помещений по форме клиента, согласованной с Кредитным департаментом Банка, начиная с момента начала продаж, подтвержденными выписками ЕГРП на ежеквартальной основе.

22. Перечислять не позднее 5 рабочих дней не менее 10% денежных средств, поступивших в результате реализации помещений в Объекте, в счет досрочного погашения задолженности по кредиту.

23. Предоставление в Банк надлежащим образом оформленного полного пакета ИРД по проекту 1-й очереди (в т.ч. разрешение на строительство) не позднее 31.12.2015.

24. Страхование строительно-монтажных работ и связанных с ними рисков (материальный ущерб - СМР, материалы, используемые при строительстве объекта), на сумму не менее суммы ссудной задолженности, где выгодоприобретателем является Банк.

25. Предоставление Застройщиком Банку действующего договора страхования гражданской ответственности застройщика за неисполнение или ненадлежащее исполнение обязательств по передаче жилого помещения по ДДУ в строительстве в строящихся объектах в Объекте, который должен удовлетворять требованиям, указанным в ФЗ «Об участии в долевом строительстве многоквартирных домов и иных объектов недвижимости и о внесении изменений в некоторые законодательные акты РФ» от 30.12.2004 № 214-ФЗ.

26. Обеспечить предоставление в Банк в течение 90 календарных дней с момента ввода построенного Объекта в эксплуатацию свидетельства о праве собственности на нереализованные площади Объекта.

27. Заключение в течение 60 календарных дней с момента получения свидетельства о праве собственности на построенный Объект договора ипотеки на нереализованные площади Объекта.

28. Предоставление в Банк первого зарегистрированного ДДУ в течение 90 дней с момента получения РНС.

29. Обеспечить объем исковых требований к Заемщику не более 10% от валюты баланса.

30. Обеспечить предоставление в Банк копии надлежащим образом оформленных изменений в проектную декларацию, не позднее 15 календарных дней с момента внесения изменений.

31. Обеспечить согласование с Банком основных договоров по затратной части Проекта, в том числе:
- договора генерального подряда;
- договора на выполнение функций технического Заказчика;
- договоров на поставку технологического оборудования и др.

32. Обеспечить предоставление иной информации по требованию Банка, в том числе, но не ограничиваясь:
- бухгалтерской отчетности ООО «НДВ Строй», с расшифровками незавершенного строительства в разрезе объектов и статей затрат

Проекта, кредитов и займов, привлеченных средств дольщиков;
- ОСВ по счетам 60,62,76,66,67,58,08,86,01. Анализ 51 счета в разрезе по счетам и Банкам в помесячной разбивке.
- справок по продаже площадей Проекта по форме Банка;
- справок по финансированию Проекта по форме Банка;
- актуализированного CF Проекта.

33. Предоставление Договора № 3-1 залога прав аренды земельного участка от 17.12.2014 г. с отметкой о государственной регистрации ипотеки – до 15/12/2015.

В случае невыполнения перечисленных в пп. 2 (по Продукту 1); 3, 5,6, 10, 12-14, 18, 21-24 (по Продукту 1 (выборка лимита свыше 375 000 000 руб.), Продукту 2) условий (любого), Банк имеет право повысить ставку за пользование кредитом на 1% за невыполненное условие. Процентная ставка может быть восстановлена, до первоначального уровня, в период, следующий за периодом, в котором состоялось исполнение нарушения

В случае невыполнения по Продукту 1 (выборка лимита свыше 375 000 000 руб.), Продукту 2 перечисленных в пп. 7-9, 11, 16-17, 19-20 условий (любого), Банк имеет право на досрочное истребование задолженности Заемщика перед Банком, образовавшейся на момент требования Банка.

| | |
|---|---|
| Дополнительные условия | 1. Предусмотреть вывод средств из проекта, полученных от реализации объекта, в размере не более 89 700 314,19 рублей (компенсационных расходов в размере 72 612 600 рублей + 6 000 000 рублей накладных расходов + 11 087 664,19 рублей проектных расходов на возмещение расходов, понесенных АО ХК «ГВСУ «Центр». Вывод средств допускается осуществлять из первого объема реализации жилых и нежилых помещений. |
| | 2. Предусмотреть коллегиальное согласование участниками Компании по выбору партнеров и условий по реализации объектов недвижимости в рамках проекта. |
| | 3. В случае возникновения потребности в дополнительном финансировании проекта, стороны (инициаторы проекта/бенефициары) обязуются осуществлять финансирование дополнительных расходов за счет собственных средств, либо за счет заемных средств привлеченных от третьих лиц на принципах субординации к кредитным средствам Банка. |
| | 4. В случае, если какая-либо из сторон, будет намерена осуществить продажу прав на принадлежавшие ей активы в рамках проекта (намерение «выхода» из проекта), предусмотреть: |
| | - приоритетное приобретение прав на данные активы проекта текущими инициаторами/участниками проекта, либо |
| | - погашение данной стороной части долга перед ПСБ пропорционально размеру продаваемых активов. |
| | Механизм реализации данного пункта указывается в отдельном акционерном соглашении. |
| Юридические условия | 1. Определить компанию для реализации совместного проекта в форме общества с ограниченной ответственностью – ООО «НДВ Строй» (далее Компания). |
| | Стороны подтверждают, что ранее Компания принадлежала лицам, подконтрольным А.А. Хрусталеву, в связи с чем А.А. Хрусталев гарантирует отсутствие каких-либо обстоятельств, в том числе существенных обязательств или оснований для привлечения к ответственности, возникших до распределения долей в Компании на условиях настоящего документа и влекущих для Компании негативные последствия. Данное условие будет отражено в |



соглашении участников.

2. ООО «НДВ-Групп» обязуется привести устав Компании в соответствие с договоренностями, изложенными в настоящем соглашении.

3. <u>Доли участия в Компании</u> должны быть распределены следующим образом: 15% - ООО «НДВ-Групп», 35% - APORFOTIA TRADING LTD или иная компания по согласованию с Банком, 25% - компания по согласованию с Черкасовым М.А., 25% - компания по согласованию с Долиным А.В. Для этих целей ООО «НДВ-Групп», являющееся 100% собственником Компании, передает по номиналу 75% долей в уставном капитале Компании компаниям, указанным выше.

4. <u>Распределение дохода</u> от реализации совместного проекта: доход от реализации проекта распределяется после погашения суммы кредита пропорционально долям участия.

5. <u>Управление в Компании</u>: управление в Компании осуществляется из следующего принципа распределения голосов - 51% голосов принадлежит ООО «НДВ-Групп» и APORFOTIA TRADING LTD (или иной компании по согласованию с Банком) в совокупности, 49% голосов принадлежит компаниям, указанным по согласованию с Черкасовым М.А. и Долиным А.В. в совокупности. В случае отсутствия согласия между ООО «НДВ-Групп» и APORFOTIA TRADING LTD (или иной компании по согласованию с Банком), указанные стороны голосуют в следующей пропорции: 15% голосов принадлежит ООО «НДВ-Групп» и 36% голосов принадлежит APORFOTIA TRADING LTD (или иной компании по согласованию с Банком). Данный принцип действует до полного погашения кредитов в Банке, указанных в разделе «Лимит кредитования» или выданных в последующем.

6. <u>Органы управления</u>: Стороны договорились определить следующие органы управления Компании – Общее собрание участников, Правление в составе Генерального директора и представителя группы компаний Промсвязь, Генеральный директор – представитель Черкасова М.А. и Долина А.В., финансовый директор – представитель группы компаний Промсвязь.

7. <u>Компетенция органов управления</u>: В соответствии с разграничением компетенций, являющимся Приложением №1 к настоящему соглашению.

8. <u>Финансирование Компании</u>: в случае, если объема Продуктов 1 и 2 будет недостаточно для реализации совместного проекта, Стороны самостоятельно предпримут все необходимые действия по поиску дополнительного финансирования для реализации проекта.

9. <u>Условия выхода из участника Компании из проекта</u>: выход осуществляется путем продажи своей доли остальным участникам Компании по номинальной стоимости. Обязательным условием выхода участника Компании из проекта является погашение объема обязательств Компании пропорциональное его доли участия, за исключениями, установленными п.10 настоящего раздела.

10. APORFOTIA TRADING LTD (или иная компании по согласованию с Банком – участник ООО «НДВ Строй»), не являясь специалистом в строительной области способным оказывать влияние на соответствующие процессы, вправе выйти из Компании без принятия на себя пропорционального объема обязательств при наступлении любого из следующих условий:

- незаключение дополнительного соглашения к инвестконтракту на 2-ю очередь проекта (п. 7.3.1 инвестконтракта), и соглашение об уступке на остальные земельные участки (п.



7.3.2 инвестконтракта) не позднее 19.11.2018;

- отказ Фабрике или Компании в заключении доп. соглашений к договору аренды или нового договора аренды и/или в случае инициирования оспаривания в суде изменения категории земель, вида разрешённого использования, договора аренды или доп. соглашений к нему, а также соглашения о перенайме аренды (не дожидаясь решения суда);
- приостановление или запрещение строительства Объекта или его части по требованиям третьих лиц, в том числе в результате оспаривания решения на строительство;
- незаключение Компанией договора участия в долевом строительстве с Фабрикой по первой очереди до 19.07.2016;
- вид разрешённого использования земельных участков не изменён в срок до 11.12.2015 по 1-й очереди, до 22.01.2018 по 2-й очереди;
- не получено положительное заключение строительной экспертизы в срок до 11.04.2016 по 1-й очереди, до 22.05.2018 по 2-й очереди;
- не получено разрешение на строительство в срок до 19.05.2016 по 1-й очереди, до 03.07.2018 по 2-й очереди.

11. Корпоративный договор: стороны одновременно с приобретением долей заключают корпоративный договор, содержащий условия п.п. 4,5,6,9 настоящего раздела.

12. Хрусталев А.А., Черкасов М.А. и Долин А.В. подтверждают отсутствие ограничений и обременений, в результате которых строительство ограничивается или становится невозможным.

Д.Н. Ананьев

М.А. Черкасов

А.А. Хрусталев

А.В. Долин

7

## INDICATIVE TERMS
### for setting the lending limit of Limited Liability Company NDV Stroy

Everything below is solely a description of preliminary terms on which the transaction may be implemented and does not create obligations for Promsvyazbank PJSC (hereinafter, "PSB" or the "Bank") to provide financing. The final implementation of the transaction depends on further due diligence of the borrower, as well as on the parties to the transaction and the project, negotiation of the terms, their approval by the Credit Committee and the Board of Directors of the Bank (if necessary) and proper legal implementation. The list of terms is not complete, final or inclusive of all possible requirements of PSB.

However, if the transaction is implemented, then in any case, during its implementation the terms specified below will be observed, unless otherwise agreed by the Parties.

| | |
|---|---|
| The Borrower | NDV Stroy LLC |
| Type of lending product | Products 1, 2. Credit facility with fixed disbursement limit |
| Purpose of obtaining a lending product, the amount and currency of financing | Product 1 Securing the obligations of NDV Stroy LLC within the framework of the preliminary agreement on the assignment of rights and obligations (lease assignment) under the long-term lease agreement for the land plot No. M-08-022112 dated 31 May 2004 (the "lease assignment agreement"). Product 2 Financing of design work, costs of obtaining technical specifications, and project management |
| Lending limit | Total lending limit: 1,400,000,000.00 rubles Product 1: 750,000,000.00 rubles; Product 2: 650,000,000.00 rubles; |
| Term of financing | Products 1, 2; 3 years |
| Interest rate, fees | Products 1, 2. Key rate + 5% per annum. Lending fee – 0.1% of the limit amount to be paid on the date of signing the loan agreement. |
| Procedure for the repayment of the principal debt | On a quarterly basis, starting from the 2nd quarter of 2016, by equal instalments. |
| Interest payment procedure | Products 1, 2: on a quarterly basis. |
| Property | a set of residential, non-residential and mixed-use buildings that will be built on land plots with a total area of 581,303 sq. meters located at the address: Moscow, Mitino district, near Rozhdestveno village. |
| Security | 1. Pledge of the right to claim the return of the security deposit made within the framework of the preliminary agreement on the conclusion of a lease assignment agreement and an investment contract; 2. Pledge of 100% participation interests in the Borrower's charter capital (without the pledgor's guarantee); |

*(Signature)*

| | |
|---|---|
| | 3. Pledge of property rights for the Property being sold (Mitino Project);<br>4. Suretyships of A.A. Khrustalyov, Mr. M.A. Cherkasov, A.V. Dolin and D.N. Ananyev (safe deposit). |
| **Conditions precedent to the issuance of the loan** | **Product 1 (with respect to the drawdown limit of up to 375,000,000 rubles).**<br>1. Registration of sureties in accordance with clause 4 of the "Security" section.<br>2. Coordination of targeted spending of credit funds with the Bank.<br><br>**Product 1 (with respect to the drawdown limit of more than 375,000,000 rubles) and Product 2.**<br>1. Submission to the Bank of the Statement of reconciliation of payments on obligations between HC GVSU Center JSC and Krasnogorskaya Poultry Farm CJSC (hereinafter referred to as the Factory) under the preliminary agreement on assignment of rights and obligations (transfer) under the long-term land plot lease contract No. M-08-022112 dated 31.05.2004 under the preliminary agreement on the assignment of rights and obligations (lease assignment) under long-term land lease agreement No. M-08-022112 dated 31 May 2004.<br>2. Provision of extracts from the USRR confirming the existence of a registered right to lease land plots, as well as the absence of encumbrances over this right.<br>3. Absence of obstacles to changing the type of permitted use of land plots at the Property for housing construction, as well as to obtaining a construction permit for the Property.<br>4. Provision of documents confirming that none of the land plots is encumbered by the natural complex regime and any other restrictions and prohibitions on construction (except for encumbrance with the coastal area and water protection zone regimes specified in clause 1.1 of the lease agreement, as well as the protection zone of the power transmission line).<br>5. Provision of copies of the following contracts signed by all parties (with all appendices, amendments and additions thereto) concluded by HC GVDU "Center" JSC/ NDV Stroy LLC:<br>5.1. Land sublease agreement No. S-1 dated 17 December 2014.<br>5.2. An investment contract with the terms defining the land plots related to different stages of construction, and the timing for each stage (the deadlines for concluding an additional agreement defining the scope of 2nd stage obligations, the deadlines for changing permitted use, the deadlines for transferring rights to the land plots and the deadlines for obtaining construction permits).<br>5.3. A preliminary agreement dated 17 December 2014 on the assignment of rights and obligations (lease assignment) under long term land lease No. M-08.022112 dated 31 May 2004.<br>5.4. Pledge agreement for land lease rights No. Z-1 dated 17 December 2014.<br>6. Provision of a document confirming the absence of outstanding lease payments for land plots or any other grounds for early termination of the lease agreement.<br>7. Provision of signed agreements on the transfer of rights and obligations from GVSU to NDV Stroy LLC between GVSU, |

2

| | |
|---|---|
| | Krasnogorskaya Poultry Farm CJSC and NDV Stroy LLC under all contracts listed in clause 5 of this document and concluded by GVSU.<br>8. Submission of the signed business plan of the project approved by the Bank.<br>9. Negotiation of targeted spending of credit funds with the Bank in accordance with the agreed form.<br>10. Inclusion in the credit documentation of the condition for the allocation of at least 10% of funds received from the sale of premises in the Property for the repayment of loan obligations to the Bank.<br>11. Provision of an up-to-date CF project approved by the Bank.<br><br>**Product 2.**<br>1. Registration of security in accordance with clauses 1-4 of the section "Security".<br>2. Positive opinion confirming the legal capacity of legal entities participating in transactions, as well as the powers of their managers. |
| **Mandatory conditions** | **Product 1.**<br>1. Positive opinion confirming the legal capacity of legal entities participating in transactions, and the powers of their managers – in accordance with the internal documents of the Bank – by 1 October 2015.<br>2. Registration of security in accordance with clauses 1-3 of the section "Security" – by 1 October 2015.<br><br>**Product 1 (with respect to the drawdown limit of more than 375,000,000 rubles) and Product 2.**<br>1. Provision of copies of the following contracts signed by all parties (with all appendices, amendments and additions thereto) concluded between Krasnogorskaya Poultry Farm CJSC and NDV Stroy LLC:<br>1.1. The agreement for participation in shared construction – by 31 December 2015.<br>1.2. The agreement on the partial assignment of rights and obligations (lease assignment) under long-term land lease agreement No. M-08.022112 dated 31 May 2004 – by 10 October 2015.<br>2. Contracts concluded before 1 August 2015 shall be submitted by 7 September 2015, and the remaining contracts – within 5 business days from the date of their conclusion.<br>3. The absence during the entire validity period of the lending limit of any outstanding lease payments for the land plots, as well as any other grounds for early termination of the lease agreement.<br>4. An independent surveyor of the project, the procedure for coordination with the surveyor for the purpose of confirmation of the project budget and its subsequent monitoring, as well as the source of payment for the surveyor's expenses, shall be agreed with the Bank by 18 September 2015.<br>5. To carry out 100% of the turnover associated with settlements and sales on the project through the settlement accounts opened with the Bank during the entire crediting period.<br>6. To carry out 100% of the Developer's and General Contractor's turnover related to settlements and sales on the project through settlement accounts opened with the Bank during the entire lending period. |

3

7. Changes in the construction project (including project documentation), changes in the construction period, in the size of the areas, and designation of the areas shall be approved by the Bank in advance in writing.

8. The Borrower shall not borrow funds/shall coordinate such borrowing/attraction of funds with the Bank (i.e., obtaining loans, and other forms of attracting funds on a refundable and reimbursable basis) and shall not provide any sureties/guarantees for third parties' obligations.

9. The Borrower shall not provide loans to third parties and shall not purchase securities, including in the form of a bill.

10. The Borrower shall ensure the timely renewal of the construction permit for the property.

11. The Borrower shall not perform the following actions (or shall ensure that such actions are not performed) until the full fulfillment of its obligations under the Loan Agreement without a written approval of the Bank:
   - changing the composition of the Borrower's participants, including change in the ability of certain person(s) (beneficiary/beneficiaries) to influence, directly or indirectly, the procedure for the Borrower's management;
   - changing the amount of the Borrower's charter capital;
   - changing the corporate form of the Borrower;
   - changes in the Borrower's governing bodies.

12. In the event of any increase/change in the Borrower's charter capital, ensure that 100% of participation interests in the charter capital are pledged to the Bank, taking into account its increase, within 30 days.

13. Ensure that the requested amount of financing complies with the financing schedule, as well as stages of construction and installation operations under the project.

14. Ensure the targeted use of credit funds by submitting KS-2 and KS-3 forms.

15. Ensure that information in KS-2 and KS-3 forms is consistent with the actual scope of work performed (physical confirmation) and target figures.

16. to ensure the realization of property rights to obtain the ownership of areas in the Project (the project in Mitino) and/or to raise funds from participants of share construction under the 214-FZ "On Participation in Shared Construction of Apartment Buildings and Other Real Estate and on Amendments to Certain Legislative Acts of the Russian Federation.

17. Not to alienate, without the approval of the Bank, the property owned by the Borrower, if the amount of transaction or several interrelated transactions exceeds 5 million rubles, as well as if the terms of alienation of such property contradict the provisions on distribution of competence (Annex № 1 to this agreement).

18. Negotiate with the Bank on a monthly basis the number of apartments (indicating their characteristics; meters, cost, location, etc.) intended for sale for the next month.

19. The Borrower shall not execute transactions related to encumbrance or pledge of the Borrower's assets without a written approval of the Bank.

20. The Borrower shall not distribute net profits between the

4

participants of NDV Story LLC during the entire lending period without a written approval of the Bank.

21. The Borrower shall ensure the provision of information, on a quarterly basis, on areas and price of the sold premises according to the client's form approved by the Credit Department of the Bank, starting from commencement of sales, confirmed by extracts from the USRR.

22. The Borrower shall transfer within 5 business days at least 10% of the funds received as a result of the sale of premises in the Property in connection with early repayment of the loan debt.

23. The Borrower shall submit to the Bank a properly executed full set of initial permits for the 1st stage project (including a construction permit) by 31 December 2015.

24. The Borrower shall provide insurance of construction and installation works and related risks (material damage – construction and installation works, materials used in the construction of the property), for the amount of not less than the amount of loan debt, where the Bank acts as a beneficiary.

25. The Developer shall submit to the Bank a valid contract of insurance of the developer's civil liability for non-fulfillment or improper fulfillment of obligations related to transfer of residential premises under the agreement for participation in shared construction in facilities being built in the Property, which shall meet the requirements set forth in Federal Law No. 214-FZ "On Participation in the Shared Construction of Apartment Houses and Other Immovable Properties and Amendments to Certain Legislative Acts of the Russian Federation", dated 30 December 2004.

26. A certificate of title to the unsold areas of the Property shall be submitted to the Bank within 90 calendar days from the date of commissioning of the constructed Property.

27. A mortgage agreement for the unsold areas of the Property shall be entered into within 60 calendar days of receipt of the certificate of title to the constructed Property.

28. The first registered agreement for participation in shared construction shall be submitted to the Bank within 90 days of receipt of the construction permit.

29. The amount of claims against the Borrower shall not exceed 10% of the balance sheet total.

30. A copy of the duly executed amendments to the project declaration shall be submitted to the Bank within 15 calendar days from the date of making such amendments.

31. The main agreements on the cost-related part of the Project shall be approved by the Bank, including:

– a general contractor agreement;
– contracts for performing the functions of a technical customer;
– contracts for the supply of technological equipment, etc.

32. Other information shall be submitted to the Bank at its request, including, but not limited to:

– financial statements of NDV Stroy LLC with a breakdown of construction in progress in the context of facilities and cost items of the Project, credit and loans, and attracted funds of participants in shared construction;
– trial balance on accounts 60, 62, 76, 66, 67, 58, 08, 86, and 01.

*(Signature)*

| | |
|---|---|
| | Analysis of account 51 broken down by accounts and Banks in a monthly breakdown.<br>– statements confirming the sale of the Project areas according to the form provided by the Bank;<br>– statements confirming financing of the Project according to the form provided by the Bank;<br>– up-to-date CF Project.<br>33. The pledge agreement for land lease rights No. Z-1 dated 17 December 2014 with a note confirming the state registration of the mortgage shall be submitted by 15 December 2015.<br><br>In case of non-fulfillment of any terms listed in paragraphs 2 (with respect to Product 1); 3, 5, 6, 10, 12-14, 18, 21-24 (with respect to Product 1 (drawdown of limit exceeding 375,000,000 rubles), and Product 2), the Bank shall have the right to increase the interest rate for using the loan by 1% for a non-fulfilled condition. The interest rate may be reinstated to its original level in the period following the period in which such violation was committed.<br><br>In the event of non-fulfillment of any terms with respect to Product 1 (drawdown of the limit exceeding 375,000,000 rubles) or Product 2 listed in paragraphs 7-9, 11, 16-17, and 19-20, the Bank shall have the right to request that the Borrower early repay to the Bank its debt which was formed at the time of the Bank's request. |
| **Additional terms** | 1. To provide for withdrawal of funds from the project received from the sale of the property in the amount of not more than 89,700,314.19 rubles (compensation expenses in the amount of 72,612,600 rubles + overhead expenses in the amount of 6,000,000 rubles + project costs in the amount of 11,087,664.19 rubles related to compensation for expenses incurred by HC GVSU "Center" JSC. It is permitted to withdraw funds from the first sales volume of residential and non-residential premises.<br>2. To provide that the Company's participants shall jointly agree upon the choice of partners and conditions for the sale of properties under the project.<br>3. If there is a need for additional financing of the project, the parties (project initiators/beneficiaries) undertake to finance additional costs at their own expense, or at the expense of borrowed funds raised from third parties on the principle of subordination to the Bank's credit funds.<br>4. If any of the parties intends to sell the rights to the assets belonging to it within the project (intends to "exit" the project), the following shall be provided for:<br>– priority acquisition of rights to these project assets by the current initiators/participants of the project, or<br>– repayment by this party of part of the debt to PSB pro rata to the size of the assets being sold.<br>The mechanism of implementation of this clause is specified in a separate shareholders' agreement. |
| **Legal terms** | 1. It shall be established that NDV Stroy LLC, a limited liability company (the "Company"), shall be chosen for the implementation of a joint project. |

*(Signature)*

The parties confirm that the Company was previously owned by persons controlled by A.A. Khrustalyov, in connection with which A.A. Khrustalyov guarantees the absence of any circumstances, including material obligations or grounds for prosecution, that arose before the distribution of participation interests in the Company on the terms of this document and entail adverse consequences for the Company. This condition will be reflected in the participants' agreement.

2. NDV-Group LLC undertakes to bring the charter of the Company in line with arrangements specified in this agreement.

3. <u>Participation interests in the Company</u> shall be distributed as follows: 15% – NDV-Group LLC, 35% – APORFOTIA TRADING LTD or other company agreed with the Bank, 25% – a company agreed with M.A. Cherkasov, 25% – a company agreed with A.V. Dolin. For these purposes, NDV-Group LLC which holds 100% in the Company shall transfer at the nominal value a 75% participation interest in the charter capital of the Company to the companies specified above.

4. <u>Distribution of proceeds</u> from the sale of the joint project: proceeds from the sale of the project shall be distributed after the repayment of the amount of the loan pro rata to participation interests.

5. <u>Governance of the Company</u>: governance of the Company shall be carried out on the basis of the following principle of distribution of votes – 51% the votes shall be jointly held by NDV-Group LLC and APORFOTIA TRADING LTD (or other company agreed with the Bank), and 49% of votes shall be jointly held by companies specified by agreement with M.A. Cherkasov and A.V. Dolin. If there is no agreement between NDV-Group LLC and APORFOTIA TRADING LTD (or other company agreed with the Bank), the aforementioned parties shall vote as follows: 15% of votes shall be held by NDV-Group LLC and 36% f votes shall be held by APORFOTIA TRADING LTD (or other company agreed with the Bank). This principle shall be valid until the full repayment of loans issued by the Bank specified in the section "Lending limit" or issued subsequently.

6. <u>Governing bodies</u>: The parties agreed to define the following governing bodies of the Company – the general meeting of participants, the Management Board consisting of the General Director and a representative of the Promsvyaz group of companies, the General Director – the representative of M.A. Cherkasov and A.V. Dolin, financial director финансовый директор – the representative of Promsvyaz group of companies.

7. <u>Competence of the governing bodies</u>: In accordance with the distribution of competences specified in Annex 1 to this agreement.

8. <u>Financing of the Company</u>: if the volume of Products 1 and 2 is not sufficient for the implementation of a joint project, the Parties will independently take all necessary actions to find additional financing for the implementation of the project.

9. <u>Conditions for the exit by a participant of the Company from the project</u>: exit from the project shall be carried out through the sale of his participation interest to other participants of the Company at the nominal value. A mandatory condition for the exit by a participant

*(Signature)*

of the Company from the project is the repayment of the scope of the Company's obligations pro rata to his participation interest, subject to exceptions set out in clause 10 of this section.

10. APORFOTIA TRADING LTD (or other company agreed with the Bank – a participant in NDV-Stroy LLC), which is not a construction specialist capable of influencing the respective processes, may withdraw from the Company without assuming a proportional amount of obligations upon the occurrence of any of the following conditions:
    - failure to sign an addendum to the investment contract for the 2nd stage of the project (clause 7.3.1 of the investment contract) and an assignment agreement for the remaining land plots (clause 7.3.2 of the investment contract) by 19 November 2018;
    - denial of amendment or renewal of the existing lease agreement with the Farm or the Company and/or challenging in court of any change in the category of lands, type of permitted use, the lease agreement or addenda thereto, as well as the lease assignment agreement is being initiated (without waiting for a court decision);
    - suspension or prohibition of construction of the Property or its part at the request of third parties, including as a result of challenging a construction decision;
    - failure by the Company to enter into an agreement for participation in shared construction with the Farm for the 1st stage by 19 July 2016;
    - the type of permitted use of land plots is not changed by 11 December 2015 for the 1st stage and by 22 January 2018 for the 2nd stage;
    - a positive opinion of the construction experts is not received by 11 April 2016 for the 1st stage and by 22 May 2018 for the 2nd stage;
    - a construction permit is not received by 19 May 2016 for the 1st stage and by 3 July 2018 for the 2nd stage.

11. Corporate agreement: the parties, simultaneously with the acquisition of shares, enter into a corporate agreement containing the terms of clauses 4, 5, 6, and 9 of this section.

12. A.A. Khrustalyov, M.A. Cherkasov and A.V. Dolin confirm that there are no restrictions and encumbrances, as a result of which construction is limited or becomes impossible.

| *(Signature)* | *(Signature)* | *(Signature)* |
|---|---|---|
| D.N. Ananyev | M.A. Cherkasov | A.A. Khrustalyov |

*(Signature)*
A.V. Dolin

*A.V. Afanasiev*

*(Signature)*

*Перевод данного текста выполнен переводчиком*
*Краплиным Денисом Александровичем* /signature/
**This text was translated by a translator Kraplin Denis Alexandrovich**



| Российская Федерация | **Russian Federation** |
|---|---|

**Город Москва.**

Двадцать восьмого января две тысячи двадцать первого года.

Я, Прокошенкова Елена Евгеньевна, нотариус города Москвы, свидетельствую подлинность подписи переводчика Краплина Дениса Александровича.

Подпись сделана в моем присутствии.

Личность подписавшего документ установлена.

**Moscow city.**

**The twenty-eighth of January, two thousand and twenty-first year.**

I, Prokoshenkova Elena Evgenievna, Notary Public of Moscow, hereby certify authenticity of the signature made by the translator Kraplin Denis Alexandrovich.

The signature is made in my presence.

The identity of the person who signed the document is verified.



Зарегистрировано в реестре: № 21/86-н/77-2021- *1558*

Уплачено за совершение нотариального действия: 400 руб. 00 коп.

Е.Е. Прокошенкова

Registered in the register under No. 21/86-н/77-2021- *1558*

Paid for the performance of a notarial act: 400 rubles 00 kopecks.

/signature/ E.E. Prokoshenkova

*Coat-of-arms seal: Notary Public of Moscow Prokoshenkova E. E. * Taxpayer Identification Number 212901853874*

Прошнуровано, пронумеровано и скреплено печатью 15 лист(-а, -ов).

Е.Е. Прокошенкова

Bound, numbered and sealed 15 sheets

/signature/ E.E. Prokoshenkova

*Coat-of-arms seal: Notary Public of Moscow Prokoshenkova E. E. * Taxpayer Identification Number 212901853874*

## Изменение Индикативных условий

Настоящее Изменение Индикативных условий установления лимита кредитования компании Общества с ограниченной ответственностью «НДВ-Строй», заключенных «15» сентября 2015 года между г-ном Ананьевым Д.Н., г-ном Хрусталевым А.А., г-ном Черкасовым М.А. и г-ном Долиным А.В., далее по тексту именуется «Изменение», согласовано и подписано г-ном Ананьевым Д.Н., г-ном Долиным А.В. и г-ном Черкасовым М.А., далее совместно именуются «Стороны» и по отдельности «Сторона», в Москве **20 июня 2016 года.**

### ПРИНИМАЯ ВО ВНИМАНИЕ, ЧТО

☐ **Общество с ограниченной ответсностью «Рождествено»** (ранее – Общество с ограниченной ответственностью «НДВ-Строй»), далее по тексту именуется – «**Общество**», выполнило взятые на себя обязательства и подписало (1) Кредитный договор об открытии кредитной линии (с установленным лимитом выдачи) № 0450-15-2-0 от 31 августа 2015 года с изменениями и дополнениями, заключенного между Публичным акционерным обществом «Промсвязьбанк», в качестве Кредитора, и Обществом, в качестве Должника, и (2) Кредитный договор об открытии кредитной линии (с установленным лимитом выдачи) № 0494/15-2-0 от 29 сентября 2015 года с изменениями и дополнениями, заключенного между Публичным акционерным обществом «Промсвязьбанк», в качестве Кредитора, и Обществом, в качестве Должника;

☐ 20 июня 2016 года между **Акционерным обществом «Рождествено»** (ОГРН 1167746519698) в качестве **Покупателя**, и **Обществом с ограниченной ответственностью «НДВ групп»**, в качестве **Продавца**, подписан Договор купли-продажи доли в уставном капитале Общества с ограниченной ответственностью «Рождествено» в размере 100% уставного капитала.

### СТОРОНЫ НАСТОЯЩИМ ДОГОВОРИЛИСЬ О НИЖЕСЛЕДУЮЩЕМ:

1. Одобрить выход Хрусталева А.А. из Проекта посредством продажи 100% доли Общества Покупателю и освобождение Хрусталева А.А. от любых ранее взятых на себя обязанностей (далее – «Выход Хрусталева А.А. из Проекта»), за исключением обязательств, указанных в разделе 3 настоящих Изменений и иных обязательств, установленных настоящими Изменениями;

2. Подтвердить отсутствие каких-либо претензий к Хрусталеву А.А., связанных с выходом Хрусталева А.А. из Проекта и продажей 100% (Ста процентов) доли в уставном капитале Общества Покупателю;

3. В соответствии со статьей 406.1 ГК РФ Хрусталев А.А. обязуется возместить имущественные потери Общества и/или его Участников (в том числе суммы всех выплат Общества и/или его Участников по требованиям любых государственных органов или третьих лиц, а также расходы Общества и/или его Участников, связанные с получением ими возмещения указанных имущественных потерь, в том числе затраты на получение юридических услуг и иные расходы в связи с возмещением имущественных потерь (в том числе в судебном порядке)), возникшие в результате какого-либо события, которое произошло до 1 октября 2015 года, при этом указанные имущественные потери должны быть разумными и документарно подтвержденными и не должны возникнуть в результате действий, инициированных и/или совершенных Обществом, его участниками и/или г-ном Ананьевым Д.Н.. При этом участники Покупателя, Общество и/или г-н Ананьев Д.Н. обязуются предпринять все необходимые и разумные меры для надлежащей защиты Общества от претензий государственных налоговых органов либо иных кредиторов.

4. Изложить п. 5 раздела «Юридические условия» в следующей редакции:

«Управление в Компании: управление в Компании осуществляется из следующего принципа распределения голосов - 51% голосов принадлежит компании, указанной Ананьевым Д.Н., 49% голосов принадлежит компании, указанной Черкасовым М.А. и Долиным А.В. Данный принцип действует до полного погашения кредитов в Банке, указанных в разделе «Лимит кредитования» или выданных в последующем.».

5. Стороны предоставят Хрусталеву А.А. возможность участия во всех тендерных комитетах и строительных совещаниях в рамках Проекта с правом голоса, учитывающимся при принятии решения по вопросам, связанным с экономией в рамках Проекта, увеличением расходов и /или уменьшением прибыли Проекта, при этом Сторона-1 обязуется руководствоваться исключительно интересами Проекта.

6. Во всем остальном, что не предусмотрено настоящим Изменением, Стороны руководствуются условиями Индикативных условий.

7. Настоящее Изменение вступает в силу с момента подписания Сторонами и является неотъемлемой частью Индикативных условий.

8. Настоящее Изменение составлено в 4 (четырех) экземплярах, по одному для каждой из Сторон и 1 (один) экземпляр – для г-на Хрусталева А.А., каждый из которых считается подлинником, а вместе они составляют один и тот же документ. Настоящее Изменение может быть подписано и переправлено в виде сканированной копии по электронной почте, при этом оно будет иметь полную силу и обязательно для исполнения всеми Сторонами. Любые документы по настоящему Изменению, направляемые Сторонами друг другу в виде сканированной копии по электронной почте, будут иметь силу до момента получения соответствующей Стороной оригинала документа направленного по электронной почте.

ПОДПИСИ СТОРОН:

_____          _____          _____
Ананьев Д.Н.                     Долин А.В.                       Черкасов М.А.

_____
Хрусталев А.А.

## Amendment to the Indicative Terms

This Amendment to the Indicative Terms for setting the lending limit of Limited Liability Company NDV-Stroy, entered into on 15 September 2015 between Mr. D.N. Ananyev, Mr. A.A. Khrustalyov, Mr. M.A. Cherkasov and Mr. A.V. Dolin, hereinafter referred to as the "Amendment", has been agreed upon and signed by Mr. D.N. Ananyev, Mr. A.V. Dolin and Mr. M.A. Cherkasov, hereinafter jointly referred to as the "Parties" and each individually, the "Party", in Moscow on **20 June 2016**.

WHEREAS:

☐    **Limited Liability Company "Rozhdestveno"** (previous name – Limited Liability Company "NDV-Stroy"), hereinafter referred to as the "Company", fulfilled its obligations and signed (1) Credit Facility Agreement (with fixed disbursement limit) No. 0450-15-2-0 dated 31 August 2015 (as amended) entered into between Promsvyazbank Public Joint-Stock Company as a Lender and the Company as a Debtor, and (2) Credit Facility Agreement (with fixed disbursement limit) No. 0494-15-2-0 dated 29 September 2015 (as amended) entered into between Promsvyazbank Public Joint-Stock Company as a Lender and the Company as a Debtor;

☐    On June 20, 2016, **Joint stock company "Rozhdestveno"** (Principal State Registration Number 1167746519698) as the **Purchaser** and **Limited Liability Company "NDV Group"** as the **Seller** signed the Agreement for the Sale of a 100% Participation Interest in the Charter Capital of Limited Liability Company "Rozhdestveno".

THE PARTIES AGREED AS FOLLOWS:

1.    To approve A.A. Khrustalyov's withdrawal from the Project through the sale of a 100% participation interest in the Company to the Purchaser and A.A. Khrustalyov's release from any of the previously assumed obligations ("A.A. Khrustalyov's Withdrawal from the Project"), with the exception of obligations specified in section 3 of this Amendment and other obligations established by this Amendment;

2.    To confirm the absence of any claims against A.A. Khrustalyov associated with A.A. Khrustalyov's withdrawal from the Project and the sale of a 100% participation interest in the Company's charter capital to the Purchaser;

3.    Pursuant to article 406.1 of the RF Civil Code, A.A. Khrustalyov agrees to compensate property losses suffered by the Company and/or its Participants (including the amounts of all payments made by the Company and/or its Participants in connection with any claims of government authorities or third parties, as well as expenses incurred by the Company and/or its Participants in connection with recovery of the above property losses, including the costs of obtaining legal services and other expenses related to recovery of property losses (including in court)), incurred as a result of any event which occurred before 1 October 2015, provided that such property losses shall be reasonable and shall be duly documented and shall not arise as a result of actions initiated and/or performed by the Company, its participants and/or Mr. D.N. Ananyev; and further provided that the Purchaser, all participants of the Purchaser, the Company and/or Mr. D.N. Ananyev shall take all reasonable and necessary measures to properly protect the Company from claims of state tax authorities or other creditors.

4. Clause 5 of the section "Legal terms" shall be amended to read as follows:

"Governance of the Company: governance of the Company shall be carried out on the basis of the following principle of distribution of votes – 51% of the votes shall be held by the company specified by D.N. Ananyev, and 49% of the votes shall be held by the company specified by M.A. Cherkasov and A.V. Dolin. This principle shall be valid until full repayment of loans issued by the Bank specified in the section "Lending limit" or issued subsequently".

5. The Parties will allow A.A. Khrustalyov to participate in all tender committees and construction meetings within the framework of the Project with the right to vote, taking into account when making decisions on issues related to savings within the framework of the Project, increase in costs and/or decrease in profits of the Project, with Party-1 undertaking to be guided solely by the interests of the Project.

6. In all other matters that are not provided for by this Amendment, the Parties shall be guided by provisions of the Indicative Terms.

7. This Amendment shall enter into force upon signature by the Parties and shall be an integral part of the Indicative Terms.

8. This Amendment is made in four (4) counterparts, one for each Party and one (1) for Mr. A.A. Khrustalyov, each shall be deemed to be an original and all of them taken together shall constitute one and the same document. This Amendment may be signed and transmitted as a scanned copy by email, and shall be in full force and effect and binding on all Parties. Any documents under this Amendment sent by the Parties to each other in the form of a scanned copy by email shall be effective until the original document sent by email is received by the relevant Party.

SIGNATURES OF THE PARTIES:

| _(Signature)_ | _(Signature)_ | _(Signature)_ |
| D.N. Ananyev | A.V. Dolin | M.A. Cherkasov |

as

_(Signature)_
A.A. Khrustalyov

*Перевод данного текста выполнен переводчиком*
*Краплиным Денисом Александровичем*
*This text was translated by a translator Kraplin Denis Alexandrovich*

 /signature/

| | |
|---|---|
| **Российская Федерация** | **Russian Federation** |

**Город Москва.**
**Двадцать восьмого января две тысячи двадцать первого года.**

Я, Прокошенкова Елена Евгеньевна, нотариус города Москвы, свидетельствую подлинность подписи переводчика Краплина Дениса Александровича.

Подпись сделана в моем присутствии.
Личность подписавшего документ установлена.

**Moscow city.**
**The twenty-eighth of January, two thousand and twenty-first year.**

I, Prokoshenkova Elena Evgenievna, Notary Public of Moscow, hereby certify authenticity of the signature made by the translator Kraplin Denis Alexandrovich.

The signature is made in my presence.
The identity of the person who signed the document is verified.



Зарегистрировано в реестре: № 21/86-н/77-2021- *1155*

Registered in the register under No. 21/86-н/77-2021- *1155*

Уплачено за совершение нотариального действия: 400 руб. 00 коп.

Paid for the performance of a notarial act: 400 rubles 00 kopecks.



Е.Е. Прокошенкова

/signature/ E.E. Prokoshenkova

*Coat-of-arms seal: Notary Public of Moscow Prokoshenkova E. E. * Taxpayer Identification Number 212901853874*

Прошнуровано, пронумеровано и скреплено печатью **Ч** лист(-а,-ов).

Bound, numbered and sealed **Ч** sheets

Е.Е. Прокошенкова

/signature/ E.E. Prokoshenkova

*Coat-of-arms seal: Notary Public of Moscow Prokoshenkova E. E. * Taxpayer Identification Number 212901853874*