IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE APPLICATION OF TERRA INVEST, LLC PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS

Case No. _____

## DECLARATION OF SERGEY IVANOVICH KOVALEV

I, Sergey Ivanovich Kovalev, declare and state:

1. My name is Sergey Ivanovich Kovalev.

2. I am a practicing lawyer in Russia. My registration number is 7254 in the Register of the Moscow Bar Association. My contact information is 7th Rostovskiy lane, 15, 1st floor, Russia, 119121, Moscow (Moscow Law Office "Kovalev Tugushi & Partners"), tel. +7 (495) 902 72 72, e-mail: s.kovalev@ktaplaw.ru.

3. I represent Petitioner Terra Invest LLC in a matter presently pending before the Arbitrazh Court of Moscow. The case number of that matter is A40-36319/2021.

4. Terra Invest is the "Claimant" in that matter, in which it requests invalidation of decisions made during the 2019 annual general meeting of shareholders (the "2019 AGM") of Rozhdestveno JSC ("JSC-R") because Terra Invest's interests were fraudulently represented during such meeting by an individual using a forged Power of Attorney (the "2019 AGM Case").

5. The 2019 AGM Case, in particular, concerns invalidation of shareholder resolutions on the appointment of the Board of Directors of JSC-R and on approval of several security transactions between JSC-R and Sberbank PJSC, which qualify as large and interested-party transactions for JSC-R.

6. The discovery Terra Invest has applied for under 28 U.S.C. § 1782 would be for use in the 2019 AGM Case.

7. I also represent Terra Invest in another matter presently pending before the Arbitrazh Court of Moscow. The case number of that matter is A40-36650/2021.

8. In this matter, Terra Invest is also the "Claimant" seeking a determination that the forged Power of Attorney was in fact forged and thus invalid (the "Forged POA Case").

9. The Arbitrazh Procedural Code governs the admissibility of evidence in the 2019 AGM Case and the Forged POA Case. Under Art. 64(1), Art. 64(2), Art. 66(1), Art. 67, Art. 75 and Art. 255 of the Arbitrazh Procedural Code, documentary evidence (including, in particular, contracts and other agreements; statements; certificates; acts; reports; emails; financial, business and other records; other documents, whether legal/formal or informal) and sworn testimony obtained under U.S. law are admissible for use in the Arbitrazh Court of Moscow.

10. Art. 64(1) of the Arbitrazh Procedural Code provides as follows:

*Evidence with regard to a case shall be data on the facts thereof obtained in the procedure provided for by this Code and other federal laws which serves as a basis for establishing by an arbitrazh court the presence or absence of circumstances substantiating the claims and objections of the persons participating in the case, as well as other circumstances important for the correct consideration of the case.*

11. Art. 66(1) of the Arbitrazh Procedural Code elaborates on the procedure for evidence, stating that "*[e]vidence shall be presented by the parties participating in a case...*"

12. It therefore is possible for a party in Russian court proceedings to present documentary evidence and sworn testimony from a U.S. court case as long as this evidence/testimony contains data necessary for the Russian court to establish facts substantiating either a claim or defense.

13. Art. 64(2) of the Arbitrazh Procedural Code [Evidence] provides:

*There shall be admitted as evidence written and physical evidence, explanations of the persons participating in a case, expert opinions, consultations of specialists, testimonies of witnesses, sound- and video recordings, other documents and materials.*

14. Art. 75 of the Arbitrazh Procedural Code further elaborates:

*1. Written evidence shall be taken to be contracts, acts, references, business mail and other documents in the form of digital or graphical records, or in any other form which contain data on the circumstances significant for a case and allow to establish the reliability of a document.*

*[...]*

*5. To written evidence made in whole or in part in a foreign language there shall be attached properly certified translations thereof into the Russian language.*

*6. A document obtained in a foreign state shall be recognized by an arbitrazh court as written evidence if it is legalized in the established procedure.*

2

*7. Foreign official documents shall be recognized by an arbitrazh court as written evidence without the legalization thereof in the instances provided for by an international treaty of the Russian Federation.*

*[...]*

15. Art. 255 of the Arbitrazh Procedural Code [Requirements Regarding Documents of a Foreign Origin] requires:

*1. Documents, issued, compiled or certified in accordance with the established form by the competent bodies of foreign states out of the boundaries of the Russian Federation in conformity with the rules of foreign law with respect to Russian organizations and citizens, or to foreign persons, shall be accepted by arbitrazh courts in the Russian Federation, if said documents are legalized, or if an apostille is placed on them, unless otherwise is established by an international treaty of the Russian Federation.*

*2. When they are presented to the arbitrazh court in the Russian Federation, documents compiled in a foreign language shall be accompanied with a properly certified translation thereof into the Russian language.*

16. Documentary evidence and sworn testimony obtained under U.S. law thus would fall under either "written evidence" or "other documents and materials" within the meaning of Art. 64(2) and Art. 75 of the Arbitrazh Procedural Code. These must be accompanied by properly certified translations thereof into the Russian language, and, where necessary, legalized or apostilled, in order to meet the Russian procedural formalities.

17. Art. 67(1) of the Arbitrazh Procedural Code further provides as that *"[a]n arbitrazh court shall only accept the evidence which is relevant to the case under consideration."*

18. Documentary evidence and sworn testimony obtained under U.S. law therefore will be accepted by a Russian court as long as they are relevant to the case before the Russian court, *i.e.*, help the court establish facts substantiating a claim or defense. *See supra* ¶ 10.

19. In sum, there is no prohibition on the use of documents obtained in the United States, including through the 28 U.S.C. § 1782 procedure, in the Russian court proceedings under the Arbitrazh Procedural Code, so long as these documents contain data necessary for the Russian court to establish facts substantiating a claim or defense, are accompanied with certified Russian translations, and, where necessary, legalized or apostilled.

20. If Terra Invest's application is granted, it will seek discovery of documentary evidence. Documentary evidence, as defined above, is a form of evidence that the Arbitrazh Court of Moscow routinely would consider while presiding over claims like those asserted in the 2019 AGM Case and the Forged POA Case. The records sought are likely to demonstrate and corroborate what happened during the 2019 AGM, why Terra Invest's voting interest was

wrongfully usurped, the improper financial transactions that resulted from the 2019 AGM, and how all of this was coordinated by those involved.

21. The Arbitrazh Court of Moscow will find the documentary evidence relevant and admissible in the 2019 AGM Case and the Forged POA Case under Art. 64(1), Art. 66(1), Art. 67, Art. 75 and Art. 255 of the Arbitrazh Procedural Code. The documentary evidence, for example, likely will reveal presently unknown details about transactions between JSC-R and third parties that were improperly ratified during the 2019 AGM. This documentary evidence will also reveal additional information regarding the August 4, 2020, loan from Sberbank to the Capital Group-owned and controlled company, Poultry Farm in the amount of 1.007 billion rubles—the exact amount of LLC-R's debt to Sberbank and the subsequent purchase of LLC-R's 1.007 billion rubles' debt from Sberbank. The Arbitrazh Court of Moscow is likely to find these transactions—many of which were interested party transactions—relevant to the scope of what must be unwound and whether defendants in the 2019 AGM Case benefited from such transactions. Financial records may also show how the persons involved in the fraudulent activity or their affiliates benefited from what they have done.

22. The Arbitrazh Court of Moscow will likely find communications between those involved in the scheme to use the forged Power of Attorney during the 2019 AGM relevant and admissible in the AGM 2019 Case and the Forged POA Case under Art. 64(1), Art. 66(1), Art. 67, Art. 75 and Art. 255 of the Arbitrazh Procedural Code. The email communications, for example, likely will reveal the full scope of those involved in scheming, coordinating, and using the fraudulent Power of Attorney during the 2019 AGM and the nonpublic reasons for causing JSC-R to enter into or amend certain transactions. The emails may reveal how the forged Power of Attorney was actually produced and who was involved in the forgery. The emails also are likely to show the ways in which the 2019 AGM Case defendants intentionally concealed their fraudulent activity from Terra Invest representatives. The email communications may also show whether or not Sberbank PJSC was aware of a forged Power of Attorney and the lack of the valid corporate approval with respect to the transactions between Sberbank PJSC and JSC-R approved at the 2019 AGM. If Sberbank PJSC was aware of these facts, this might increase the chances of invalidation of the relevant transactions in Russian courts.

23. Without the discovery sought, Terra Invest likely will be unable to fully pursue its claims and remedies in the 2019 AGM Case and Forged POA Case under Russian law in the Arbitrazh Court of Moscow.

I declare, under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on: June 10, 2021

_____
S.I. Kovalev